UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN C. COCQUYT, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) CAUSE NO. 3:22-cv-1022-RLM-MGG |
| | ) |
| NORFOLK SOUTHERN | ) |
| CORPORATION, | ) |
| | ) |
| *Defendant* | ) |

OPINION AND ORDER

John Cocquyt sued Norfolk Southern Corporation[1] in Indiana state court, bringing a claim for title by acquiescence. Norfolk Southern removed the action to federal court, invoking federal question jurisdiction. Mr. Cocquyt now moves to remand for improper venue and lack of subject matter jurisdiction, and moves for costs, expenses, and fees. Norfolk Southern moves for leave to file surreply. For reasons explained in this order, the court denies Mr. Cocquyt's motion to remand for improper venue but grants his motion to remand for lack of subject matter jurisdiction; denies his motion for costs and fees; and denies Norfolk Southern's motion for leave to file surreply.

---

[1]   Norfolk Southern explains that Mr. Cocquyt incorrectly identified it as Norfolk Southern Corporation and that its proper name is Norfolk Southern Railway Company. [Doc. 10 at 1].

BACKGROUND

John Cocquyt owns real property in Argos, Indiana, adjacent to property belonging to Norfolk Southern Railway Company. Mr. Cocquyt has two buildings on the land (one built in 1952 and the other in 1975) and he built a fence on the property about 20 years ago. Mr. Cocquyt had the land surveyed in 2021 and discovered that each building and the fence stretch into Norfolk Southern's property. Mr. Cocquyt sued Norfolk Southern in Marshall County, claiming title by acquiescence.

Norfolk Southern removed the complaint to the Northern District of Indiana's Hammond Division, invoking the federal question jurisdiction. 28 U.S.C. § 1331. Norfolk Southern claimed the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10501, *et seq.*, preempts state law claims and transforms Mr. Cocquyt's state law claim into a federal question. Mr. Cocquyt now moves to remand. While the parties briefed the motion to remand, Judge Simon transferred the case to South Bend because Marshall County is in the South Bend Division. Norfolk Southern then moved for leave to file a surreply. Mr. Cocquyt's motion to remand and for fees and expenses and Norfolk Southern's motion for leave to file surreply are before the court.

DISCUSSION

Mr. Cocquyt moves to remand for improper venue and lack of subject matter jurisdiction.

2

A party can remove a case from state to federal district court if the federal court would have original jurisdiction over the case. 28 U.S.C. § 1441(a). Removal is proper if it's based on statutory grounds and is timely. Boyd v. Phoenix Funding Corp., 366 F.3d 524, 529 (7th Cir. 2004). A party removing a case must comply with the removal statute's requirements, 28 U.S.C. § 1446, and a party may move to remand within thirty days of removal "on the basis of any defect." Id. § 1447(c). The removing party has the burden of showing that removal is proper. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993).

As is relevant to this case, federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This federal question jurisdiction provides a basis for removal. Boyd v. Phoenix Funding Corp., 366 F.3d at 529. If federal subject matter jurisdiction is called into question, the party invoking federal jurisdiction has the burden of showing that jurisdiction is proper. Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 540–543 (7th Cir. 2006). Doubts as to jurisdiction should be resolved in favor of remanding to state court. Doe v. Allied-Signal, Inc., 985 F.2d at 911.

*Motion to Remand for Improper Removal Procedure*

Mr. Cocquyt moves to remand because Norfolk Southern didn't follow proper removal procedure. He argues that Norfolk Southern removed to the wrong division within the Northern District of Indiana, contrary to the removal statute's procedures. The removal statute allows removal "to the district court of

the United States for the district *and division* embracing the place where such action is pending." 28 U.S.C. § 1441(a) (emphasis added). The Northern District of Indiana's South Bend Division embraces Marshall County, id. § 94(a)(2), and Mr. Cocquyt filed suit in Marshall County, so the action was removable to the South Bend Division. Mr. Cocquyt urges that remand is proper given that removal procedure is strictly enforced in the Seventh Circuit. Gossmeyer v. McDonald, 128 F.3d 481, 489 (7th Cir. 1997) ("A complaint stating a claim falling under federal question jurisdiction may be removed only according to the procedures spelled out in 28 U.S.C. § 1446, unless another statute dispenses with them.").

Norfolk Southern concedes that removing the action to Hammond was error but disagrees with the error's effect. Judge Simon transferred the action to South Bend after Mr. Cocquyt moved to remand. [Doc. 19]. Norfolk Southern argues that Judge Simon's transfer order cured the removal defect, so remand was proper.

The parties' disagreement about divisional venue points to a wrinkle in the venue statutes that Congress resolved in 2011. The general venue statute in Chapter 87 of Title 28 provides multiple possible venues for an action brought in federal court. 28 U.S.C. § 1391. In contrast, the venue statute for removed actions in Chapter 98 defines proper venue more narrowly; a state court action "may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." Id. § 1441(a).

4

Chapter 87 includes the general removal statute as well as authority allowing district courts to transfer a case to cure a venue defect: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Id. § 1406(a). If this last provision applies to removal actions, then Judge Simon's transfer order cured the removal defect and the motion to remand for improper venue is moot.

Courts disagree over whether a § 1406 transfer can cure removal defects as to venue. The Supreme Court has explained that § 1406 doesn't apply to removal actions because § 1406 is part of the Chapter 87 general removal statute, which "has no application to . . . a removed action. The venue of removed actions is governed by [Chapter 89]." Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953). Courts have taken this to mean that transferring a removal action doesn't cure a removal defect. Maysey v. CraveOnline Media, LLC, No. CV-09-1364, 2009 U.S. Dist. LEXIS 109338, at *2–9 (D. Ariz. Nov. 5, 2009) (collecting cases). They've also reasoning that improper division is effectively jurisdictional and the removal procedure statute lacks flexibility. Id.

Other courts have reached the opposite outcome. They've reasoned that division isn't jurisdictional and that the interest of justice allow transfer, so transfer to the proper division cures any defect. Keeth v. State Farm Fire & Cas. Co., No. 10-13219, 2011 U.S. Dist. LEXIS 11398, at *9 (E.D. Mich. Feb. 7, 2011) (collecting case and concluding that transfer is proper).

This disagreement found resolution with the Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011). The Jurisdiction and Venue Clarification Act of 2011 codified the rule from Polizzi v. Cowles Magazines, Inc. that removal venue is determined by § 1441 and not by § 1391. Walker v. Highmark BCBSD Health Options, Inc., No. 2:20-CV-01975, 2022 U.S. Dist. LEXIS 99243, at *12 (W.D. Pa. June 3, 2022). The law does so explicitly, stating that the general venue statute "shall not determine the district court to which a civil action pending in a State court may be removed." 28 U.S.C. § 1390(c). But the statute doesn't stop there. It goes on to apply the general venue statute's *other* provisions to removal actions: "but [Chapter 87] shall govern the transfer of an action so removed as between districts and divisions of the United States district courts." Id. In sum, the Jurisdiction and Venue Clarification Act makes clear that transfer of a removed case to the proper venue in the interest of justice cures the removal defect. Id. § 1406(a).

Mr. Cocquyt's correct that Hammond was the wrong division, but Judge Simon's transfer order cured the defect under the authority of § 1406(a). This is the sort of provision that the Seventh Circuit has said can excuse improper removal procedure. *See* Gossmeyer v. McDonald, 128 F.3d 481, 489 (7th Cir. 1997) ("A complaint stating a claim falling under federal question jurisdiction may be removed only according to the procedures spelled out in 28 U.S.C. § 1446, *unless another statute dispenses with them.*") (emphasis added). Norfolk Southern removed this action to the wrong division but that defect has been cured, so the court denies Mr. Cocquyt's motion to remand for improper removal.

6

*Motion to Remand for Lack of Federal Question Jurisdiction*

Mr. Cocquyt moves to remand for lack of subject matter jurisdiction. 28 U.S.C. 1447(c). Norfolk Southern invoked federal question jurisdiction in removing the case, 28 U.S.C. § 1331, asserting that the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10501, *et seq.*, preempts Mr. Cocquyt's state-law claim. Mr. Cocquyt now moves to remand, arguing that despite the ICC Termination Act's broad preemption, his claim for title by acquiescence falls outside the ICC Termination Act's scope.

A complaint ordinarily gives rise to federal question jurisdiction only if the complaint expressly alleges a federal claim. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 5–6 (2003). "Absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Id. at 6. An exception is when "a federal statute wholly displaces the state-law cause of action through complete pre-emption." Id. at 8. That sort of claim "even if pleaded in terms of state law, is in reality based on federal law," and removable. Id.

The ICC Termination Act established the Surface Transportation Board and vested the Board with exclusive jurisdiction over transportation by rail carriers. 49 U.S.C. § 10501(b). The Act precludes other relief by establishing that "[t]he remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." Id. "Transportation" is broadly defined and includes "property . . .

7

related to the movement of passengers or property, or both, by rail." 49 U.S.C. § 10102(9)(A).

Congress intended for "broad and sweeping" preemption under the ICC Termination Act. Union Pac. R.R. Co. v. Chi. Transit Auth., 647 F.3d 675, 678 (7th Cir. 2011). The ICC Termination Act can preempt a state or local action that interferes with railroad operations categorically or as applied. Union Pac. R.R. Co. v. Chi. Transit Auth., 647 F.3d at 679. Categorical preemption applies when a state or local action would directly deny a railroad to operate or would directly regulate matters regulated by the Surface Transportation Board Id. at 679 n.3. As-applied preemption is "based on the degree of interference that the particular action has on railroad transportation" and occurs when a state law action "would have the effect of preventing or unreasonably interfering with railroad transportation." Id. at 679. But the ICC Termination Act doesn't only preempt state or local government action — it also preempts "state-law efforts *against railroads* to treat rights-of-way as abandoned or lost through adverse possession." Chessie Logistics Co. v. Krinos Holdings, Inc., 867 F.3d 852, 859 (7th Cir. 2017) (emphasis in original).

The parties agree that the ICC Termination Act's preemption sweeps broadly, but they disagree about whether a claim for title by acquiescence lies within that sweep. Mr. Cocquyt argues that the ICC Termination Act doesn't preempt his state claim of acquiescence, so there's no federal question jurisdiction. Mr. Cocquyt first asserts the principle that the ICC Termination Act

8

doesn't preempt contracts and other voluntary agreements. In this circuit, a railroad operator's voluntary agreement doesn't implicate ICC Termination Act preemption. Union Pac. R.R. Co. v. Chi. Transit Auth., 647 F.3d 675, 682 (7th Cir. 2011) ("If a state or local government secures the use of property in a way that affects railroad transportation by contract or other agreement, there is no issue of federal preemption."). Other courts have similarly concluded that voluntary agreements aren't categorically preempted and typically aren't preempted as applied. *E.g.*, PCS Phosphate Co. v. Norfolk S. Ry. Co., 559 F.3d 212, 218–222 (4th Cir. 2009). Mr. Cocquyt then likens his claim for title by acquiescence to a contract claim because Indiana courts describe the doctrine of acquiescence as premised on an agreement between neighbors rather than hostility. Huntington v. Riggs, 862 N.E.2d 1263, 1268 (Ind. Ct. App. 2007) (title by acquiescence is based on agreement and is distinct from adverse possession); Freiburger v. Fry, 439 N.E.2d 169, 172–173 (Ind. Ct. App. 1982). Mr. Cocquyt concludes that his claim falls within the category of voluntary agreements that aren't preempted.

Norfolk Southern argues that the ICC Termination Act preempts Mr. Cocquyt's claim. Norfolk Southern first asserts that ICC Termination Act preemption covers "claims that would use state law to take railroad property, whether through condemnation, adverse possession, prescriptive easement, or otherwise." [Doc. 17 at 3]. Norfolk Southern points out that adverse possession claims can be preempted, Chessie Logistics Co. v. Krinos Holdings, Inc., 867 F.3d at 859 (citing In re Jie Ao, No. FD 35539, 2012 STB LEXIS 206 (S.T.B. June

9

6, 2012)), then compares the title to acquiescence claim to adverse possession; both permanently deprive a landowner of property, even if the former is based on agreement and the latter is based on hostility. Norfolk Southern also cites to authority, including Surface Transportation Board opinions, holding that a claim is preempted if it would prevent a railroad from using property in the future, even if the railroad doesn't use the property now. *E.g.*, 14500 Ltd. LLC Pet'n for Decl. Order, FD 35788, 2014 STB LEXIS 136 (S.T.B. June 4, 2014) (preemption applies to "state law claims that would . . . interfere with rail use, present *or future*.") (emphasis added); B & S Holdings LLC v. BNSF Railway Co., 889 F. Supp. 2d 1252 (E.D. Wash. 2012); In re Jie Ao, No. FD 35539, 2012 STB LEXIS 206 (S.T.B. June 6, 2012). Norfolk Southern responds to Mr. Cocquyt's "voluntary agreement" argument by saying that even if title by acquiescence is premised on an agreement, it's still not a contract, and such an argument is an attempt "artfully plead around the mountain of cases holding that the ICCTA preempts adverse possession claims against railroads." [Doc. 17 at 6].

Mr. Cocquyt's claim doesn't seek to directly regulate railroad transportation, so the claim requires as-applied preemption analysis instead of categorical preemption analysis. As-applied preemption under the ICC Termination Act occurs when a state-law claim would prevent or unreasonably interfere with railroad transportation as applied. Union Pac. R.R. Co. v. Chi. Transit Auth., 647 F.3d 675, 680 (7th Cir. 2011). Mr. Cocquyt's complaint includes a land survey showing that his building is awfully close to railroad tracks, and Norfolk Southern is right that his claim would permanently deprive

10

it of land, but these facts don't show that the claim would prevent or unreasonably interfere with railroad transportation. The court could only reach that conclusion by assuming the conclusion based on Mr. Cocquyt's land survey; Norfolk Southern neither explains how, nor presents evidence that, Mr. Cocquyt's claim would interfere with railroad transportation.

Requiring evidence of interference might first seem overly formalistic when interference seems so obvious based on Mr. Cocquyt's land survey. But requiring evidence is both consistent with requiring the proponent of federal jurisdiction to show that jurisdiction is proper and with ICC Termination Act caselaw. In the leading case from this circuit, the court of appeals affirmed the district court's grant of injunctive relief based on evidence that a state-law action would interfere with railroad transportation. Union Pac. R.R. Co. v. Chi. Transit Auth., 647 F.3d 675 (7th Cir. 2009) *aff'g* No. 07-cv-229, 2009 U.S. Dist. LEXIS 13526 (N.D. Ill. Feb. 23, 2009). In that opinion, the court of appeals also cited approvingly the Surface Transportation Board's holding that adverse possession claims are preempted. Chessie Logistics Co. v. Krinos Holdings, Inc., 867 F.3d at 859 (citing In re Jie Ao, No. FD 35539, 2012 STB LEXIS 206 (S.T.B. June 6, 2012)). That Surface Transportation Board decision explained that the state-law claim was preempted because record evidence showed that the claim could interfere with railroad transportation in the future. In re Jie Ao, No. FD 35539, 2012 STB LEXIS 206, at *15 (S.T.B. June 6, 2012) ("Even if the property . . . is not currently being used as an active line of railroad, the record shows that loss . . . would unreasonably interfere with potential reactivation."). The Eighth Circuit Court of

11

Appeals relied on the Surface Transportation Board's record and findings of fact to deny review of a decision by the board involving preemption. City of Lincoln v. Surface Transp. Bd., 414 F.3d 858 (8th Cir. 2005). In a case on which Norfolk Southern heavily relies, the Fourth Circuit Court of Appeals affirmed that a state-law claim for quiet title was preempted after the railroad company (coincidentally, Norfolk Southern) explained that the railroad company used the land to drain surface water and explained that deprivation of the land would impair rail transportation operations. Skidmore v. Norfolk S. Ry. Co., 1 F.4th 206, 214 (4th Cir. 2021). A district court found that an adverse possession claim was preempted on a motion to remand and cross-motion to dismiss, but that court was able to conclude that the action would interfere with railroad transportation because the party moving to dismiss presented evidence in the form of declarations to describe how the state-law claim would interfere with transportation. B & S. Holdings, LLC v. BNSF Ry. Co., 889 F. Supp. 2d 1252 (E.D. Wash. 2012). Unlike each of those prevailing parties, Norfolk Southern hasn't explained how Mr. Cocquyt's claim would impair railroad transportation and instead either relies on a rule based on Norfolk Southern's mere ownership of railroad property or asks the court to assume interference with railroad transportation based on how close to a railroad track Mr. Cocquyt's buildings appear to be.

Without evidence that transferring the property Mr. Cocquyt claims will have an immediate or future effect on railroad transportation, the court can't conclude that the ICC Termination Act preempts Mr. Cocquyt's claim, so the

12

court grants Mr. Cocquyt's motion to remand. The state court will be obligated to address preemption and the Surface Transportation Board's exclusive jurisdiction, if necessary. *See* 49 U.S.C. § 10501(b); 14500 Ltd. v. CSX Transp., Inc., No. 1:12CV1810, 2013 U.S. Dist. LEXIS 208159, at *10–11 (N.D. Ohio Nov. 18, 2013).

*Remaining Issues*

Norfolk Southern moves for leave to file a surreply. [Doc. 21]. Norfolk Southern argues that Mr. Cocquyt's reply improperly seeks dismissal for the first time, seeks to undo Judge Simon's transfer order, and improperly introduces Judge Simon's transfer order as evidence. Norfolk Southern's proposed surreply addresses each of those issues. Courts generally don't allow surreplies but may allow a surreply if it raises or addresses a new issue or a development in the law. Fletcher v. Hoeppner Wagner & Evans, LLC, No. 2:14-CV-231, 2018 U.S. Dist. LEXIS 135817, at *4 (N.D. Ind. Aug. 10, 2018).

Mr. Cocquyt argued in his opening brief, albeit briefly, that the case should be dismissed. [Doc. 14 at 2]. Mr. Cocquyt's elaboration in his reply brief didn't introduce an altogether new argument. As to the other arguments, the court would reach the same conclusion as to the merits of the motion to remand with or without the proposed surreply, so the court denies Norfolk Southern's motion for leave to file surreply.

Mr. Cocquyt moves for costs, expenses, and fees incurred because of removal and remand. He argues that Indiana law of title by acquiescence is over a century old and Union Pacific Railroad Co. v. Chicago Transit Authority, 647 F.3d 675 (7th Cir. 2011), forecloses removal for claims like this, so Norfolk Southern had no reasonable basis for removal. A court may impose costs and expenses incurred as a result of removal. 28 U.S.C. § 1447(c). A court should grant costs and expenses if the removing party didn't have an objectively reasonable basis for removal, that is, if clearly established law established no basis for removal. Lott v. Pfizer, Inc., 492 F.3d 789, 792 (7th Cir. 2007).

Norfolk Southern didn't meet its burden of showing that federal jurisdiction was proper, but clearly established law didn't foreclose its basis for removal. That title by acquiescence is premised on voluntary agreement rather than hostility is clearly established; what's not clearly established is whether title by acquiescence is more like a contract, so excluded from ICC Termination Act preemption, or more like adverse possession, so capable of being preempted. *Compare* Union Pac. R.R. Co. v. Chi. Transit Auth., 647 F.3d at 682 ("If a state or local government secures the use of property in a way that affects railroad transportation by contract or other agreement, there is no federal preemption.") *with* Chessie Logistics Co. v. Krinos Holdings, Inc., 867 F.3d 852, 859 (7th Cir. 2017) ("[F]ederal law preempts state-law efforts *against railroads* to treat railroad rights-of-way as abandoned or lost through adverse possession."). Nor was it clearly established that an evidentiary showing is required of a proponent of ICC Termination Act preemption — courts have relied on evidence but haven't made

clear that an absence of evidence would've prevented courts from finding federal preemption. The court denies Mr. Cocquyt's motion for fees and expenses.

CONCLUSION

For the foregoing reasons, the court:

(1) DENIES Mr. Cocquyt's motion to remand for improper venue but GRANTS Mr. Cocquyt's motion to remand for lack of subject matter jurisdiction [Doc. 13] and REMANDS this action to Marshall County Circuit Court;

(2) DENIES Mr. Cocquyt's motion for fees and expenses [Doc. 13]; and

(3) DENIES Norfolk Southern's motion for leave to file surreply [Doc. 21]

SO ORDERED.

ENTERED:   March 8, 2023

                                      /s/ Robert L. Miller, Jr.
                               Judge, United States District Court